UNITED STATES *v.* HUMBLE OIL & REFINING CO., LESLIE B. CANION, ET AL. (No. 4971)[1]

[1] C. A. D. 717.

United States Court of Customs and Patent Appeals, July 10, 1959

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section, *Douglas A. Kahn*, trial attorney (*Alan S. Rosenthal*, trial attorney of counsel), for the United States.

*Sharretts, Paley & Carter* (*Joseph F. Donohue* of counsel), for appellees.

Before WORLEY, Acting Chief Judge, and RICH and MARTIN, Associate Judges

RICH, Judge, delivered the opinion of the court:

This appeal is from the judgment of the United States Customs Court, Second Division, (C.D. 2003) sustaining the importers' protest and holding that steel "API" tubing and line pipe is classifiable under paragraph 312 of the Tariff Act of 1930, as structural shapes of steel rather than under paragraph 328 of the Act, as steel tubes not specially provided for, as found by the collector.

Paragraph 312 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, so far as pertinent, reads:

Beams, girders, joists, angles, channels, car-truck channels, tees, columns and posts, or parts or sections of columns and posts, and deck and bulb beams, together with all *other structural shapes* of iron or *steel:*

  Not assembled, manufactured or advanced beyond hammering, rolling or casting_____ 0.1¢ per lb.

   Machined, drilled, punched, assembled, fitted, fabricated for use or otherwise advanced beyond hammering, rolling, casting _____ 7½% ad val.

  (Emphasis ours.)

Paragraph 328 of the Tariff Act of 1930, as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T.D. 52373, reads:

Finished or unfinished iron or steel tubes not specially provided for:

       *  *  *

Other_____12½% ad val.

Both parties took extensive testimony, from which it appears that the merchandise is of two distinct kinds, one of which is known as API line pipe and is used for transporting oil in gathering and pipeline systems, while the other is known as API tubing and is used to carry oil from the bottom of oil wells. "API" stands for the American Petroleum Institute, which fixes standards for various kinds of pipe and tubing used in the oil industry. The issues as to the classification of line pipe and tubing are somewhat different and will, therefore, be considered separately.

The Customs Court held, we think properly, that the word "structures," is not limited to such erections as buildings, bridges, and edifices, and further held that oil wells and pipe lines are structures. We find it unnecessary to consider whether the latter holding is correct, since we are unable to agree with the apparent holding that every element which is a part of a structure is a "structural shape" if it is subjected therein to forces and loads such as tension, compression and the like. On the contrary, in *European Trading Co.* v. *United States,* 19 CCPA 82, T.D. 45225, it was held that wire netting used for holding stucco in the sides of buildings was not a structural shape and in *Otis McAllister & Co.* v. *United States,* 27 CCPA 4, C.A.D. 52, a similar holding was made with respect to corrugated metal sheets used to form walls and roofs of buildings, notwithstanding the fact that the netting and sheets formed parts of structures and carried substantial loads. We are here concerned with whether the imports are "structural shapes," not with what is or is not a structure and we agree with the statement in *The Frost Railway Supply Co.* v. *United States,* 39 CCPA 90, C.A.D. 469, that no precise definition can be laid down to cover the term "structural shape." We also call attention to the following from the opinion in *United States* v. *The Winkler-Koch Engineering Co.* 41 CCPA 121, 134, C.A.D. 540:

We think it would be *impossible,* under the phraseology adopted by the legislative branch of the Government in the Tariff Act of 1930, *for the courts to lay down a rule and declare that such rule settled the questions of what is and, therefore, what is not a structural shape* within the meaning of paragraph 312, *supra.* (Emphasis ours.)

Whether a particular article falls within the meaning of that term must be determined on the basis of the particular circumstances of the case under consideration, including the purpose for and manner in which the article is used, as well as whether or not it forms a part of a structure.

### Line Pipe

As shown by the testimony, line pipe may be of various sizes ranging from 2⅜ to 14 inches in diameter. It is not used in the wells themselves, but for gathering oil from the wells and transporting it to other points, such as refineries. Such transportation involves the use of internal pressures which may be as high as 1500 pounds per square inch and the pipe must be designed to withstand such pressures. Also, since the pipe is normally laid underground, it is subjected to some external pressure, but such pressure is usually slight compared with the internal pressure and is not an important factor in the design of the pipe.

We are of the opinion that, even if an oil pipe line may properly be regarded as a structure, the sections of pipe which are a part of it are not "structural shapes" within the purview of paragraph 312. The primary, if not the sole, function of such pipes is the transmission of oil and while they may be required to resist high stresses, they do not serve to strengthen or support any other element. The stresses which they resist are merely those which are incidental to their primary function.

It is obvious that practically all pipes and tubing used to transport fluids are subjected to some stresses in normal use, since most fluids being transported are under pressures which, in some cases, are comparable to those to which the instant pipes are subjected, and the pipe must at least sustain its own weight between supports or outside loads.

While the Customs Court appears to have been impressed by the high pressures employed in and the vast extent of oil pipe lines, we are unable to perceive that those factors are important. The size and strength of any tubing would naturally be selected in accordance with the stresses to which it will be subjected in use. If the instant line pipes are held to be structural shapes, it is difficult to see how a similar status would be denied to pipe for use in water supply systems, steam lines, or for gas distribution. We cannot agree with the court below that anything is a "structural shape" which forms part of a structure and which in use is subject to forces tending to burst, collapse, bend, compress or stretch it, no matter how great those forces may be. Accordingly, we hold that the line pipe was properly classified by the collector under paragraph 328.

*Tubing*

The record shows that the so-called API tubing is between two and three inches in diameter and is threaded for coupling. In normal use it is inserted in an oil well after the drilled hole has been lined with a steel casing. The tubing, which is used to bring the oil to the surface, is lowered through the casing in successive lengths in the form of a string of connected sections suspended from the top section. In such an arrangement, with a long string of tubing, the upper sections, of course, are under severe tensile stresses due to the weight of the string. Additionally, the pumping of oil through the tubing causes some stress and, when no oil is present, as when the pipe is swabbed, the tubing is under some external pressure from the mud or water in the casing. There is also testimony to the effect that the string of tubing may sometimes be used to rotate a drill bit in the well, in which case it is additionally subjected to torsional stresses. Naturally, the tubing must be designed in accordance with exacting specifications to meet those conditions.

The Customs Court concluded that an oil well is a structure, that the API tubing forms a part of that structure and, by reason of the heavy stresses to which it is subjected, that the tubing is a structural shape. In reaching that conclusion reliance was placed upon the decision of this court in *United States* v. *The Winkler-Koch Engineering Co.*, 41 CCPA 121, C.A.D. 540, in which it was held that the cylindrical steel sections which form the casing of an oil well are structural shapes within the meaning of paragraph 312. That decision, however, not only fails to suggest that the tubing through which the oil passes is also a structural shape, but draws a sharp distinction between oil well casing and tubing, which distinction forms a material part of the reasoning leading to the conclusion that casing elements are structural shapes. Thus, the findings of fact on which the decision is based stated, inter alia, that the casing elements are known as "casings" and not as tubes or tubing, that they are clearly differentiated from tubes in diameter, weight and use, and that they usually become permanent fixtures in the construction of a well while the tubing may be withdrawn and used in other wells. It appears that this court felt it necessary to distinguish between tubing and casing in holding the casing elements to be structural shapes, from which it is a reasonable inference that the tubing sections were not regarded as such shapes. Certainly the decision contains no holding, express or implied, that oil tubing sections are structural shapes.

We are of the opinion that the self-supporting function, which is incidental to the primary function of transporting oil through the well pipe, does not make the tubing a structural shape. It is not uncommon in fluid supply systems of various kinds for one or more

sections of tubing or pipe to be supported wholly or in part by other sections, and the tubing or pipe must be so designed as to meet those conditions, but such supporting sections should not in our opinion be regarded as being structural shapes or as being different in any significant manner from the sections which perform no such supporting function.

We note also that neither line pipe nor well tubing bears any functional resemblance to the exemplars named in paragraph 312. Each of those exemplars is designed primarily, if not solely, to perform a supporting function, as distinguished from the primary function of the merchandise here, which is the transportation of liquid.

We have carefully considered the extensive record in this case but in our opinion it is insufficient to overcome the presumption of correctness attaching to the collector's classification of the merchandise as steel tubes not specially provided for, under paragraph 328 of the Tariff Act of 1930.

The judgment is *reversed.*